Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge REYNA.
LINN, Circuit Judge.
Richard A. Williamson (“Williamson”), as trustee for the At Home Corporation Bondholders’ Liquidating Trust, owns U.S. Patent No. 6,155,840 (“the '840 patent”) and appeals from the stipulated final judgment in favor of defendants Citrix Online, LLC; Citrix Systems, Inc.; Microsoft Corporation; Adobe Systems, Inc.; Webex Communications, Inc.; Cisco Webex, LLC; Cisco Systems, Inc.; and International Business Machines Corporation (collectively, “Appellees”). Because the district court erroneously construed the limitations “graphical display representative of a classroom” and “first graphical display comprising ... a classroom region,” we vacate the judgment of non-infringement of claims 1-7 and 17-24 of the '840 patent. Because the district court erroneously construed the limitation “distributed learning control module,” as a means-plus-function expression, we vacate the judgment of invalidity of claims 8-12 of the '840 patent under 35 U.S.C. § 112, para. 2. Accordingly, we remand.
Background
I. The '840 Patent
The '840 patent describes methods and systems for “distributed learning” that utilize industry standard computer hardware and software linked by a network to pro *1374 vide a classroom or auditorium-like metaphor — i.e., a “virtual classroom” environment. The objective is to connect one or more presenters with geographically remote audience members. '840 patent, col. 2 11. 10-14. The disclosed inventions purport to provide “the benefits of classroom interaction without the detrimental effects of complicated hardware or software, or the costs and inconvenience of convening in a separate place.” Id. at col. 2 11. 4-7.
There are three main components of the “distributed learning” system set forth in the '840 patent: (1) a presenter computer, (2) audience member computers, and (3) a distributed learning server. The distributed learning server implements a “virtual classroom” over a computer network, such as the Internet, to facilitate communication and interaction among the presenter and audience members. The presenter computer is used by the presenter to communicate with the audience members and control information that appears on the audience member’s computer screen. Id. at col. 4 1. 66-col. 5 1. 2. An audience member’s computer is used to display the presentation and can be used to communicate with the presenter and other audience members. Id. at col. 5 11. 11-14.
The '840 patent has three independent claims. These claims recite the following:
1. A method of conducting distributed learning among a plurality of computer systems coupled to a network, the method comprising the steps of:
providing instructions to a first computer system coupled to the network for:-
creating a graphical display representative of a classroom;
creating a graphical display illustrating controls for selecting first and second data streams;
creating a first window for displaying the first selected data stream; and
creating a second window for displaying the second selected data stream, wherein
the first and second windows are displayed simultaneously; and
providing instructions to a second computer system coupled to the network for:
creating a graphical display representative of the classroom;
creating a third window for displaying the first selected data stream; and
creating a fourth window for displaying the second selected data stream, wherein
the third and fourth windows are displayed simultaneously.
8. A system for conducting distributed learning among a plurality of computer systems coupled to a network, the system comprising:
a presenter computer system of the plurality of computer systems coupled to the network and comprising:
a content selection control for defining at least one remote streaming data source and for selecting one of the remote streaming data sources for viewing; and
a.presenter streaming data viewer for displaying data produced by the selected remote streaming data source;
an audience member computer system of the plurality of computer systems and coupled to the presenter computer system via the network, the audience member computer system comprising:
an audience member streaming data viewer for displaying the data produced by the selected remote streaming data source; and
a distributed learning server remote from the presenter and audience member computer systems of *1375 the plurality of computer systems and coupled to the presenter computer system and the audience member computer system via the network and comprising:
a streaming data module for providing the streaming data from the remote streaming data source selected with the content selection control to the presenter and audience member computer systems; and
a distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module.
17. A distributed learning server for controlling a presenter computer system and an audience member computer system coupled to the distributed learning server via a network, the distributed learning server comprising:
a module for providing a first graphical display on the presenter computer system, the first graphical display comprising:
a first presenter content selection control for selecting a first source of streaming content representative of graphical information;
a first presenter content display region for displaying the graphical information represented by the streaming content from the first selected source;
a second presenter content selection control for selecting a second source of streaming content representative of graphical information; and
a second presenter content display region for displaying the graphical information represented by the streaming content from the second selected source, wherein the first and second presenter content display regions are adapted to display simultaneously; and
a classroom region for representing the audience member computer system coupled to the distributed learning server; and
a module for providing a second graphical display on the audience member computer system, the second graphical display comprising:
a first audience member content display region for displaying the graphical information represented by the streaming content from the first source selected by the content selection control; and
a second audience member content display region for displaying the graphical information represented by the streaming content from the second source selected by the content selection control, wherein the first and second audience member content display regions are adapted to display simultaneously.
Id. at col. 10 11. 28-52, col. 11 11. 26-62, col. 12 11. 29-65 (emphases added for relevant terms).
II. Procedural History
Williamson accused Appellees of infringing the '840 patent based on their alleged manufacture, sale, offer for sale, use, and importation of various systems and methods of online collaboration. On March 22, 2011, Williamson filed suit in the United States District Court for the Central District of California specifically asserting infringement of all 24 claims of the '840 patent. On September 4, 2012, the district court issued a claim construction order, construing, inter alia, the following limitations of independent claims 1 and 17: *1376 “graphical display representative of a classroom” and “first graphical display comprising ... a classroom region” (collectively, the “graphical display” limitations). The district court held that these terms require “a pictorial map illustrating an at least partially virtual space in which participants can- interact, and that identifies the presenter(s) and the audience members) by their locations on the map.”
In its claim construction order, the district court also concluded that the limitation of claim 8, “distributed learning control module,” was a means-plus-function term under 35 U.S.C. § 112, para. 6. The district court then evaluated the specification and concluded that it failed to disclose the necessary algorithms for performing all of the claimed functions. The district court thus held claim 8 and its dependent claims 9-16 invalid as indefinite under § 112, para. 2.
Williamson conceded that under the district court’s claim constructions, none of Appellees’ accused products infringed independent claims 1 and 17 and their respective dependent claims 2-7 and 18-24, and that claims 8-16 were invalid. The parties stipulated to final judgment. Williamson appeals the stipulated entry of judgment, challenging these claim construction rulings. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
Discussion
I. Standard of Review
Claim construction is a legal issue that this court reviews de novo on appeal. Lighting Ballast Control LLC v. Philips Elees. N. Am. Corp., 744 F.3d 1272, 1276-77 (Fed.Cir.2014) (en banc). To ascertain the scope and meaning of the asserted claims, this court looks to the words of the claims themselves, the specification, the prosecution history, and, lastly, any relevant extrinsic evidence. Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed.Cir.2005) (en banc). Whether claim language invokes § 112, para. 6,[2] is an exercise of claim construction and is therefore a question of law, subject to de novo review. Personalized Media Commc’ns, LLC v. Int’l Trade Comm’n, 161 F.3d 696, 702 (Fed.Cir.1998).
II. The “graphical display” Limitations
Williamson asserts that the district court erred in its construction of the graphical display terms by improperly importing an extraneous “pictorial map” limitation into the claim. Williamson argues that requiring a “map” unduly narrows the claims to the preferred embodiment disclosed in the written description and that there is no support in the intrinsic record for confining the claims to a “pictorial map” that identifies the location of the participants. Williamson alleges that a proper definition must require the audience members to be able to interact with both the presenter and other audience members. He therefore asserts that the proper construction of the graphical display terms is “a viewable illustration of an at least partially virtual space that allows audience members to interact with both the presenter and other audience members.”
Appellees respond that the district court’s construction correctly limited the claims to a “pictorial map” consistent with the teachings of the written description. According to Appellees, this construction *1377 does not import a limitation from the preferred embodiment, but simply reflects the functional aspects of a “classroom” in a manner that is consistent with what the patentee invented and disclosed. Moreover, -according to Appellees, it is consistent with the only depiction of a classroom shown in the '840 patent, which shows a pictorial map as a seating chart that identifies the presenters and audience members by their locations on the map.
We agree with Williamson. The district court erred in construing these terms as requiring a “pictorial map.” First, the claim language itself contains no such “pictorial map” limitation. “[I]t is the claims, not the written description, which define the scope of the patent right.” Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed.Cir.1998); see id. (“[A] court may not import limitations from the written description into the claims.”). While the specification discloses examples and embodiments where the virtual classroom is depicted as a “map” or “seating chart,” nowhere does the specification limit the graphical display to those examples and embodiments. This court has repeatedly “cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.” Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327-28 (Fed.Cir. 2002) (quoting cases).
Here, there is no suggestion in the intrinsic record that the applicant intended the claims to have the limited scope determined by the district court. To the contrary, the embodiments and examples in the specification of classroom metaphors relating to “maps” are consistently described in terms of preference. For example, at column 2, lines 34-39, the specification states that “[t]he classroom metaphor preferably provides a map of the classroom showing the relative relationships among the presenters and audience members.” '840 patent, col. 2 11. 37-39 (emphasis added). In another example, the graphical display of Figure 6 is described as an “exemplary display” on the presenter’s computer. Id. at col. 7 11. 35-36. That exemplary display includes a window that “preferably provides a seating chart showing the audience members and presenters in the classroom or auditorium.” Id. at col. 911. 5-7 (emphasis added).
The '840 patent defines a classroom as “an at least partially virtual space in which participants can interact.” Id. at col. 6 11. 5-7. Nothing further is required, and no greater definition is mandated by the language of the claims, the specification, or the prosecution history. As is well settled, the claims must “not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.” Innova/Pure Water, Inc., v. Safari Water Filtration Sys. Inc., 381 F.3d 1111, 1117 (Fed.Cir. 2004) (internal quotations omitted).
For the foregoing reasons, we conclude that the district court incorrectly construed the graphical display terms to have a “pictorial map” limitation. We therefore vacate the stipulated judgment of non-infringement of claims 1-7 and 17-24. The “graphical display” limitations in claims 1 and 17 are properly construed as “a graphical representation of an at least partially virtual space in which participants can interact.”
III. The “distributed learning control module” Limitation
On appeal, Williamson argues that the district court erred in construing the term “distributed learning control module” as being governed by 35 U.S.C. § 112, para. 6. Williamson contends that the district court failed to give appropriate weight to *1378 the “strong” presumption against means-plus-function claiming that attaches to claim terms that do not recite the word “means.” Williamson also argues that the district court wrongly focused its analysis on the word “module” instead of the full term, ignored the detailed support provided in the written description, and misapplied our law by failing to view the term from the perspective of one of ordinary skill in the art.
Appellees respond that the district court correctly concluded that the presumption against means-plus-function claiming was rebutted because “distributed learning control module” does not have a well understood structural meaning in the computer technology field. Appellees argue that the “distributed learning control module” limitation is drafted in the same format as a traditional means-plus-function limitation, and merely replaces the term “means” with the “nonce” word “module,” thereby connoting a generic “black box” for performing the recited computer-implemented functions. In Appellees’ view, since the term should be treated as a means-plus-function claim term and there is no algorithmic structure for implementing the claimed functions in the written description, the finding of indefiniteness should be affirmed.
We agree with Williamson that the district court erred in concluding that “distributed learning control module” is a means-plus-function claim term.
Section 112, para. 6, provides that “[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof.” 35 U.S.C. § 112, para. 6 (1994). In Personalized Media Commc’ns, LLC v. International Trade Commission, 161 F.3d 696 (Fed.Cir. 1998), and again in DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005 (Fed.Cir.2006), we stated that the failure to use the word “means” in a claim limitation created a rebuttable presumption that 35 U.S.C. § 112, para. 6 did not apply. See Personalized Media, 161 F.3d at 703-04; DePuy Spine, 469 F.3d at 1023. This presumption is “a strong one that is not readily overcome.” Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358 (Fed.Cir.2004). To rebut this strong presumption, it must be demonstrated that “skilled artisans, after reading the patent, would conclude that [the] claim limitation is so devoid of structure that the drafter constructively engaged in means-plus-function claiming.” Inventio AG v. ThyssenKrupp Elevator Ams. Corp., 649 F.3d 1350, 1357 (Fed.Cir.2011). A claimed expression cannot be said to be devoid of structure if it is used “in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.” Lighting World, 382 F.3d at 1359-60.
“Technical dictionaries, which are evidence of the understandings of persons of skill in the technical arts” may inform whether claim terms connote structure. Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1320 (Fed.Cir.2004); Mass. Inst, of Tech. v. Abacus Software, 462 F.3d 1344, 1355 (Fed.Cir.2006). Moreover, in circumstances in which “[a] structure-connoting term ... is coupled with a description of [its] operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art.” Linear Tech., 379 F.3d at 1320. In making this assessment, it is important to consider the claimed expression as a whole, and not merely any single word, as well. as its surrounding textual context. See Apex Inc. v. Raritan Computer, Inc., *1379 325 F.3d 1364, 1372 (Fed.Cir.2003) (“[T]he primary source of this error lies in the district court’s reliance on single words of the limitations ... as opposed to the limitations as a whole____”); Mass. Inst, of Tech., 462 F.3d at 1356 (“The claim language here too does not merely describe a circuit; it adds further structure by describing the operation of the circuit.”).
The district court here failed to give weight to the strong presumption that 35 U.S.C. § 112, para. 6, did not apply based on the absence of the word “means.” “[W]e have seldom held that a limitation not using the term ‘means’ must be considered to be in means-plus-function form,” and “the circumstances must be [unusual] to overcome the presumption.” Lighting World, 382 F.3d at 1362.
Moreover, in determining that the strong presumption was overcome, the district court erred: (1) in failing to appreciate that the word “module” has a number of dictionary meanings with structural connotations; (2) in placing undue emphasis on the word “module” separate and apart from the claimed expression “distributed learning control module”; and (3) in failing to give proper weight to the surrounding context of the rest of the claim language and .the supporting text of the specification in reaching the conclusion that the drafter employed means-plus-function claiming.
The district court, in characterizing the word “module” as a mere nonce word, failed to appreciate that the word “module” has understood dictionary meanings as connoting either hardware or software structure to those skilled in the computer arts. While the parties here have not cited any dictionaries, we have frequently looked to the dictionary to determine if a disputed term has achieved recognition as a term denoting structure. “[J]udges are free to consult dictionaries and technical treatises ‘at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.’ ” Phillips, 415 F.3d at 1322-23 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n. 6 (Fed.Cir.1996)); see also Lighting World, 382 F.3d at 1360; Mass. Inst, of Tech., 462 F.3d at 1355. The IBM Corporation, IBM Dictionary of Computing 439 (1st ed.1994) defines “module” as a “packaged functional hardware unit designed for use with other components” and a “part of a program that usually performs a particular function of related functions.” See also Alan Freedman, The Computer Glossary 268 (8th ed.1998) (defining “module” as a “self-contained hardware or software component that interfaces with a larger system”); John Daintith & Edmund Wright, Dictionary of Computing 315 (4th ed.1996) (defining “module” as a “programming or specification construct that defines a software component” and a “component of a hardware system that can be subdivided”). These definitions all show that the term “module” has a structure connoting meaning to persons of ordinary skill in the computer arts.
Appellees cite an unpublished opinion in Ranpak Corp. v. Storopack, Inc., No. 98-1009, available at 1998 WL 513598 (Fed. Cir. July 15,1998), to support their conclusion that “module” means nothing more than “means.” That case, however, dealt with reconciling two claimed expressions that differed only in those words. The court made no reference to any dictionary meanings of the word “module” and made no analysis or ruling as to the meaning of the word “module” beyond the limited context of the issue confronting it in that case.
Not only did the district court fail to appreciate the structure-connoting mean *1380 ings of the word “module” reflected in dictionaries, it also failed to consider the claimed expression “distributed learning control ■ module” as a whole. This was error. See Apex, 325 F.3d at 1372. The adjectival modifiers “distributed learning control” cannot be ignored and serve to further narrow the scope of the expression as a whole. Id. at 1374. Here, the “distributed learning control module” is claimed as a part of the definite structure “distributed learning server” and “receive[s] communications transmitted between the presenter and the audience member computer systems,” “relay[s] the communications to an intended receiving computing system,” and “coordinares] the operation of the streaming data module.” '840 patent, col. 11 11. 55-62. These claimed interconnections and intercommunications support the conclusion that one of ordinary skill in the art would understand the expression “distributed learning control module” to connote structure.
The specification further explains that the distributed learning control module operates as a functional unit of the distributed learning server and coordinates the operation of the streaming data module through input from the presenter computer system. Id. at col. 5 11. 34-36. The specification also makes clear that the distributed learning control module includes software that runs on a portion of the distributed learning server. Id. at col. 5 11. 40-58. While the supporting specification describes the claimed expression “distributed learning control module” in a high degree of generality, in some respects using functional expressions, it is difficult to conclude that it is devoid of structure. See Lighting World, 382 F.3d at 1359-60 (A claimed expression cannot be said to be devoid of structure if it is used “in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.”)
For these reasons, we determine that the Appellees have failed to overcome the strong presumption that the expression “distributed learning control module” is not subject to 35 U.S.C. § 112, para. 6. We therefore vacate the district court’s determination that claims 8-12 are invalid under 35 U.S.C. § 112, para. 2, based on that construction.
Conclusion
Because the district court erred in construing the “graphical display” limitations of claims 1 and 17 and the “distributed learning control module” limitation of claim 8, we vacate the stipulated judgment of non-infringement of claims 1-7 and 17-24 and of invalidity of claims 8-16 and remand the case to the district court.
VACATED AND REMANDED
Costs
Costs to Williamson.

. Paragraph 6 of 35 U.S.C. § 112 was replaced with newly designated § 112(f) when § 4(c)(6) of the Leahy-Smith America Invents Act ("AIA”), Pub.L. No. 112-29, took effect on September 16, 2012. Because the patent application that led to the '840 patent was filed before the effective date of the AIA, we apply the pre-AIA version of that section.