REYNA, Circuit Judge,
concurring-in-part, dissenting-in-part, and additional views.
This is the second time around for this case. In the first, Williamson I, I dissented from the majority conclusion that the “distributed learning control module” term of claim 8 of the '840 patent recites sufficient structure to keep the claim limitation “distributed learning control module” outside of the purview of 35 U.S.C. § 112, paragraph 6.[1]
In this second time around, Williamson II, the majority reverses itself to conclude that the “distributed learning control module” term does not recite sufficient structure, is governed by 35 U.S.C. § 112, paragraph 6, and is indefinite under paragraph 2. Because this conclusion is the correct result, I concur. To explain my concurrence, I rely on the reasons I laid out in my dissent in Williamson I.
The majority, however, continues to ignore critical evidence showing that an image of a visually depicted virtual classroom is required by claim 8 of the '840 patent. I dissent from that portion of this opinion.
In addition, the majority embraces this case as an opportune vehicle to overrule as improper certain adjectives used in prior opinions in describing the § 112, paragraph 6 presumption. See e.g., Inventio AG v. ThyssenKrupp Elevator Americas Corp., 649 F.3d 1350, 1360 (Fed.Cir.2011) (describing a “strong” presumption in favor of § 112, paragraph 6 application where a claim recites “means”). I cannot say that I disagree with those statements, but I question whether those statements sidestep underlying fundamental issues involving the development of functional claiming law since 1952 when 35 U.S.C. § 112, paragraph 6 was passed.
For these and the reasons set forth below, I respectfully concur-in-part, dissent in part, and provide certain comments concerning means-plus-function claiming.
I. The “Graphical Display” Limitations.
The majority reverses the district court’s conclusion that the “graphical display representative of a classroom” terms require a pictorial map and construes the terms as “a graphical representation of an at least partially virtual space in which participants can interact.” While the majority is correct that the claims of the '840 patent do not require a pictorial map, the majority’s construction ignores a critical limitation. As reviewed below, the specification and prosecution history make clear that the “graphical display representative of a classroom” terms are properly construed as requiring a visually depicted virtual classroom.
During prosecution, the applicant explained that the invention is distinct from the prior art because the patent requires a “visual virtual classroom” displayed on both a first and second computer system:
Additionally, [the prior art] does not dis-' close the claimed feature of “creating a graphical display representative of the classroom” on a second computer system coupled to the network. The present invention allows both a first computer system (for example, the presenter computer system) and a second computer system (for example, an audience member) to view a graphical display of the classroom. This claimed feature of the present invention allows the audience *1356 members to interact in a visual virtual classroom, environment with both the presenter and other audience members. By contrast, [the prior art] merely discloses “[as] the ■ students log in, their seating locations in the classroom are shown by a highlighted icon in the classroom map on the teacher’s screen.” ... [The prior art] does not teach or suggest displaying a graphical display representative of a classroom on a student’s screen.
J.A. 1267-68 (original emphasis removed and emphases added). These statements in conjunction, with the patent’s claim terms confirm the significance of displaying visually depicted virtual classroom.
The “classroom metaphor” is used extensively in characterizing the operation, and touting the benefits, of the inventions embodied in the '840 patent. The Abstract teaches that “[t]he classroom environment module provides a classroom metaphor having a podium and rows of seats to the presenter and audience computer systems.” '840 patent Abstract. The Summary of the Invention states that the drawbacks of the prior art are overcome “by a distributed learning system that uses industry-standard computer hardware and software linked by a network like the Internet to provide a classroom- or auditorium-like metaphor to at least one presenter and at least one audience member.” Id. col. 2 11.10-14. The patent further teaches . that a “feedback region” on the presenter’s computer “preferably displays a graphical representation of the classroom” and the “classroom environment module” is used to provide “a classroom- or auditorium-like metaphor to the presenter and audience members.” Id. col. 3 11. 11-13, col. 5 1.67-col. 6 1.1.
The repeated mention of the classroom metaphor within the context of the invention and the importance of a visually depicted virtual classroom in the prosecution history indicate that the “graphical display representative of a classroom” terms require a visually depicted virtual classroom. The construction derived by the majority reads out this important limitation that distinguishes the invention from the prior art. See Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1369 (Fed.Cir.2006) (holding that it was error for the district court to read out a limitation clearly required by the claim language and specification). It is error to read a claim too broadly, as it is to read a claim too narrowly. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1321 (Fed.Cir.2005). In reading out this important limitation on the “graphical display representative of a classroom” terms, the majority sidesteps our well established rules of claim construction, causing them to reach an erroneous result.
II. Functional Claiming
The majority switches course from its prior decision, Williamson I, and now affirms the district court’s conclusion that the term “distributed learning control module” is governed by § 112 para. 6 and is indefinite under § 112 para. 2 because the specification of the '840 patent fails to disclose corresponding structure. The majority goes on to explicitly “overrule the characterization of th[e] presumption [that § 112 para. 6 does not apply when the term “means” is not used] as ‘strong.’ ” Maj. Op. at 1349-50. While I agree with that conclusion, we stop short of addressing other equally fundamental concerns about functional claiming.
Our use of § 112, .para. 6 presumptions relies on a rigid framework, where a flexible one is arguably more apt. A “presumption” is a procedural tool that shifts the burden of proof on a substantive issue: if a basic fact is established, a court accepts a conclusion on the issue unless the *1357 presumption is rebutted with evidence that meets the presumption’s associated standard of proof. 1-301 Weinstein’s Federal Evidence § 301.02 (2015).[2] Our § 112 para. 6 presumptions come from the notion that, all else being equal, it is more likely that a party is covered by a statute when it uses the words of the statute. The use of formal presumptions, the argument goes, takes this concept to the extreme, supplying one substantive test for a claim that recites “means” and another for a claim that recites other non-structural terms like “module.” The statute admits no such variation, supplying only one test: is the element “expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof.” What arguably changes is the weight we attach to different recitations in meeting this test: “means” weighs heavily, non-structural terms like “module” weigh a little less, and, at the other end of the spectrum, purely structural terms weigh heavily in the opposite direction.
A related concern is, assuming that a presumption is the right tool to analyze the statute, should a presumption arise based on the word “means.” Almost twenty years ago, this court adopted a presumption that a claim term that recites “means” invokes § 112, para. 6. York Products, Inc. v. Central Tractor Farm & Family Center, 99 F.3d 1568 (Fed.Cir.1996); Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580 (Fed.Cir.1996). Appellees’ petition for rehearing en banc argues that § 112 para. 6 provides no basis for adopting a presumption that a claim term is governed by this statute when the term “means” is used. Appellees argue that “[w]hat started out as a straightforward issue of substance ... has morphed into an issue of form.” Appellee’s Petition for Rehearing En Banc at 6. Appellees argue that “the text of [§ 112 para. 6], the Supreme Court authority leading to it, and its legislative history universally confirm that [the statute] applies to all claims that do not recite sufficient structure for performing the recited function — regardless of whether the word ‘means’ is used.” Id. at 11. Moreover, the fact that the statute uses both terms — “means” and “step”— would suggest that any presumption should apply to the use of either word. Yet, it is arguably not clear to what extent this court attaches a presumption to the word “step.”
Finally, it is generally accepted that § 112, para. 6 was passed in response to the Supreme Court’s decision in Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3 (1946). See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 27, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (collecting cases); Technitrol, Inc. v. Control Data Corp., 550 F.2d 992, 998 n. 5 (4th Cir.1977). In Halliburton, the Supreme Court made the following observations in holding certain claims that recite “means” language invalid:
The language of the claim ... describes this ... element in the ‘new[1] combination in terms of what it will do rather than in terms of its own physical charac *1358 teristics'or its arrangement in the new combination apparatus. We have held that a claim with such a description of a product is invalid....
Id. at 8, 67 S.Ct. 6.
Arguably, this rationale applies to functional claiming generally, not just to claims that recite “means.” Indeed, the Halliburton Court relied on precedent invalidating functional claims that did not recite the term “means.” Id. at 9, 67 S.Ct. 6 (citing Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 256-57, 48 S.Ct. 474, 72 L.Ed. 868 (1928).) The continued viability of this rationale, and its impact on how this Court applies § 112, para. 6 merits attention.
In sum, my view is that perhaps we need to revisit our judicially-created § 112, para. 6 presumptions.

. Williamson v. Citrix Online, LLC, 770 F.3d 1371, 1380 (Fed.Cir.2014)

. One familiar presumption is the presumption of patent validity. Under this presumption, a court accepts the conclusion that an issued patent is valid absent clear and convincing evidence negating that presumption, i.e., evidence showing that the patent is invalid. Microsoft Corp. v. i4i Ltd. P’ship, - U.S. -, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011); Commil USA, LLC v. Cisco Systems, Inc., - U.S. -, 135 S.Ct. 1920, 1928-29, 191 L.Ed.2d 883 (2015). I note that the majority opinion does not provide an associated standard of proof for the § 112 para. 6 presumptions. Indeed, I remain unconvinced that this court has applied a different standard of proof dependent on how the presumption is labeled or characterized.

. See Giles S. Rich, Congressional Intent — or, Who wrote the Patent Act of 1952?, in Patent Procurement and Exploitation 61, 66 (BNA Inc., 1963) ("Mr. Federico received a letter ... saying the [House] committee requested him to undertake the preparation of 'an overall patent revision bill’ at his earliest convenience...."); see also Louis S. Zarfas, Notes from the Editor, J. Pat. & Trademark Off. Soc'y 160 (1993) ("Examiner-in-Chief Federico was the primary author of the Patent Act of 1952.”).